IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES SALERNO ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. |
| ANITA ALVAREZ, in her official capacity ) | |
| as State's Attorney for Cook County; ) | JURY DEMAND |
| COOK COUNTY STATE'S ATTORNEY'S ) | |
| OFFICE, and COUNTY OF COOK, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

NOW COMES the Plaintiff, CHARLES SALERNO, by and through his attorney, Thomas S. Radja Jr., of COLLINS & RADJA, complaining against the Defendants as follows:

### PRELIMINARY STATEMENT

1. This is an action seeking redress for violation of the rights guaranteed to Plaintiff under Title I of the Americans With Disability Act of 1990, as amended, 42 U.S.C. § 12101 et seq., ("ADA"), for violations of rights guaranteed to Plaintiff by the Age Discrimination in Employment Act ("ADEA") of 1967, as amended, 29 U.S.C. § 621 et seq., and for retaliation under the aforementioned acts, Illinois Law, and as a result of exercising his rights under the Workers Compensation Act and the Illinois Pension Code.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343 to secure protection of and to redress deprivation of rights secured by 42 U.S.C. § 12101 et seq., 29 U.S.C. § 621 et seq, and principles of pendent and supplemental jurisdiction. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

1

3. The acts complained of herein all occurred within Cook County, Illinois. Venue is proper under 28 U.S.C. §1391 (b).

4. On or about September 11, 2008, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") for age and disability discrimination as well as retaliation. The charge was cross filed with the Illinois Department of Human Rights. On May 2, 2011, and June 10, 2011 the EEOC issued Plaintiff notices of right to sue. This lawsuit is filed within ninety (90) days of Plaintiff's receipt of the notices of right to sue letters issued to him. (See Exhibit A).

5. Plaintiff demands trial by jury for all issues which a jury trial is available.

### PARTIES

6. Plaintiff, CHARLES SALERNO ("Salerno"), is a citizen of the United States of America who resides in Illinois. Salerno was employed as an investigator for the Cook County State's Attorney's Office from January 23, 1995 until that office terminated his employment on July 1, 2008.

7. Defendant, ANITA ALVAREZ, is the State's Attorney for Cook County. Alvarez is sued in her official capacity as State's Attorney.

8. Defendant, COOK COUNTY STATE'S ATTORNEY'S OFFICE, ("State's Attorney"), is a Cook County agency of the State of Illinois.

9. Defendant, COUNTY OF COOK, is an Illinois municipal corporation, a governmental body corporate or politic organized under the laws of the State of Illinois, and provides and controls the funding of the Defendant State's Attorney. As a result of the funding provided, COOK COUNTY is a necessary party to this cause of action.

**FACTS**

10. Plaintiff was hired as an investigator for the Cook County State's Attorney's Office on January 23, 1995 and continued in that position until he was terminated on July 1, 2008.

11. On or about October 8, 2003, Plaintiff was performing his duties as an investigator performing surveillance inside a surveillance van equipped with a metal periscope in the cabin of the van. While conducting surveillance, Plaintiff smashed his head into the metal periscope when he stood up inside the van.

12. Plaintiff experienced blood loss and a cut to his head as a result of the injury. He was taken to LaGrange Hospital for treatment.

13. Plaintiff was diagnosed with a seizure disorder, posttraumatic migraines, and anxiety disorder as a result of a traumatic brain injury.

14. Plaintiff experienced symptoms of dizzy spells, bilateral headaches, neck pain, cognitive problems, fatigue, right arm weakness, and nausea. The State's Attorney's Office was notified of the injury and Plaintiff's medical condition.

15. As a result of the head injury, Plaintiff was provided an off-work release until further notice as of October 8, 2003. The State's Attorney's Office began providing Plaintiff workers compensation benefits as a result of his injury.

16. On or about October 20, 2003, Plaintiff submitted an application for disability benefits with the County Employees' Annuity and Benefit Fund of Cook County. On June 14, 2004, Plaintiff submitted a second application for disability benefits. The State's Attorney's Office was aware that Plaintiff requested disability benefits.

17. Plaintiff continued to seek treatment for his medical condition and retained a lawyer to represent his rights under the workers compensation act. On May 3, 2004, Plaintiff filed a workers compensation claim as a result of his work injury. The State's Attorney's Office was aware that Plaintiff was actively treating for his injury and that he filed a workers compensation claim.

18. On or about November 12, 2004, Dr. Oswiecimski reported that Plaintiff could not return to work at that time because of his seizure disorder for which he was being treated.

19. On or about December 6, 2004, the State's Attorney unilaterally stopped paying Plaintiff's workers compensation benefits.

20. Plaintiff continued to seek treatment to alleviate his seizure disorder, and remained off work while his workers compensation claim was being disputed by Cook County.

21. On or about August 16, 2006, Cook County ordered Plaintiff to return to work as of August 28, 2006, based upon an evaluation conducted by a workers compensation appointed medical opinion disregarding medical opinions from Plaintiff's treating physicians indicating that he could not return to work.

22. On August 26, 2006, Plaintiff was provided an off-work note from Dr. Olmstead, indicating that he could not return to work because of his seizure disorder.

23. On or about January 11, 2007, the State's Attorney's Office benefits coordinator Kathy Wallace began contacting Plaintiff indicating that they would consider him as voluntarily abandoning his job.

24. The State's Attorney did not inquire as to Plaintiff's medical condition, or as to whether an accommodation could be provided to allow Plaintiff to return to work based on any medical restrictions.

25. On or about January 29, 2007, Plaintiff's treating physician, Dr. Ivkov, provided another off work notification indicating that Plaintiff continued to suffer from Seizure disorder.

26. On or about February 13, 2007, Trisha Brannigan, Director of Human Resources for State's Attorney's Office informed Plaintiff that the County was beginning to deduct his vacation, sick, personal and compensatory time while he remained off of work.

27. The State's Attorney's Office was aware that Plaintiff had a pending workers compensation claim and disability claim seeking work related benefits.

28. On or about April 9, 2007, Brannigan unilaterally determined that Plaintiff's injury was no longer work related and placed Plaintiff on an "unapproved leave of absence" status. The director provided Plaintiff with FMLA information as well as information to apply for disability benefits.

29. At no time did anyone from the State's Attorney's Office request whether an accommodation could be made for Plaintiff to return to work with his seizure disorder.

30. On or about November 14, 2007, John Curran, the State's Attorney's Deputy Supervisor for Labor and Employment sent correspondence to Plaintiff indicating that if he did not return to work as of November 26, 2007 that the State's Attorney would consider Plaintiff had voluntarily resigned his position as investigator.

31. On November 26, 2007, an attorney for Plaintiff sent correspondence to the State's Attorney's Deputy Supervisor indicating that Plaintiff was still treating for his seizure disorder and his treating physicians had not cleared Plaintiff to return to work.

32. Plaintiff's attorney indicated that this was a disputed workers compensation issue and cautioned the State's Attorney's Office from taking any adverse employment action based on Plaintiff's medical condition.

33. On or about February 19, 2008, the State's Attorney began to terminate Plaintiff for job abandonment and filed internal charges with the Cook County Investigations Bureau.

34. On or about March 25, 2008, Plaintiff's union notified the State's Attorney that Plaintiff was still under a doctors care for his neurological condition.

35. The State's Attorney's Office was aware that a workers compensation claim and disability claim was pending regarding Plaintiff's medical condition and that Plaintiff continued to treat for his medical condition of seizure disorder.

36. On July 1, 2008, the State's Attorney's Office terminated Plaintiff's employment alleging job abandonment despite its knowledge that Plaintiff continued to be under treatment for his work injury.

## COUNT I.
## AMERICAN WITH DISABILITIES ACT
## DISABILITY DISCRIMINATION

37. Plaintiff realleges and asserts the allegations contained in paragraphs (1) through (36) set forth above, as paragraph (1) through (36) of Count I of his Complaint.

38. At all times relevant to this cause of action, Plaintiff has been an individual with a disability, seizure disorder, for purposes of the ADA, 42 U.S.C. §12102(2), in that he suffered from a physical and/or mental impairment that substantially limits one or more of the major life activities of an individual and/or he was regarded by the Defendant as having such an impairment.

39. Plaintiff has a record of his medical disability and was perceived by the Defendant as having such an impairment(s).

6

40. At all times relevant, Plaintiff was a qualified individual with a disability who, with reasonable accommodation could perform the essential duties of his position. 42 U.S.C. § 12111(8).

41. The ADA provides that "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having such an impairment… whether or not the impairment limits or is perceived to limit a major life activity." See 42 U.S.C. §§12102 and 12112(a).

42. Defendant intentionally discriminated against Plaintiff and Plaintiff's employment was terminated for pretextual reasons and Defendant has not terminated non-disabled employees and/or other similarly-situated employees who were not perceived as disabled.

43. The aforementioned acts and omissions of Defendant, including Plaintiff's termination, constituted unlawful discrimination against Plaintiff because of his perceived disability, in violation of the provisions of the ADA.

44. Defendant's actions were arbitrary, capricious and implemented in reckless disregard of the physical limitation of Plaintiff and in violation of the ADA.

45. As a direct and proximate result of the above alleged act or omissions of the Defendants, Plaintiff has suffered damages, including but not limited to, lost back and future wages and benefits, mental anguish, emotional pain and suffering, future pecuniary loss, and other consequential damages.

## COUNT II
## AMERICAN WITH DISABILITIES ACT
## DISABILITY RETALIATION

46. Plaintiff realleges and asserts the allegations contained in paragraphs (1) through (45) set forth above, as paragraph (1) through (45) of Count I of his Complaint.

47. Plaintiff's filing of a disability application and a workers compensation claim as a result of his medical condition, seizure disorder, was done with the knowledge of the State's Attorney's Office.

48. The filing of a disability application and workers compensation claim as a result of his disabling condition was a protective activity.

49. Plaintiff was terminated as a result of his medical condition, seizure disorder, and his perceived disability by the Defendants. The termination of Plaintiff resulted from his engagement in protective activities.

50. Plaintiff was at all relevant times in compliance with the Defendants employment policies as it pertained to seeking disability benefits and workers compensation benefits when a work related injury occurs.

51. Plaintiff's employment was terminated for pretextual reasons and Defendant has not terminated non-disabled employees and/or other similarly-situated employees who were not perceived as disabled.

52. The retaliatory acts of the Defendants have resulted in extreme humiliation and embarrassment to Plaintiff and has diminished his reputation in the community.

53. The acts of the Defendants have resulted in the denial or loss of salary and other benefits, other economic damages and severe emotional pain, suffering and distress to Plaintiff.

54. But for the unlawful acts of the Defendants, Plaintiff would not have suffered Damages.

## COUNT III
## AMERICAN WITH DISABILITIES ACT
## FAILURE TO PROVIDE REASONABLE ACCOMODATION

55. Plaintiff realleges and reasserts the allegations continued in paragraphs (1) through (54) of Count I and II of his Complaint as paragraphs (1) through (54) of his Complaint.

56. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

57. Defendant was aware of the nature and scope of Plaintiff's disability and potential for accommodation. Defendant was provided medical documentation as part of Plaintiff's workers compensation and disability claims.

58. At no time from the date of Plaintiff's injury to the date of his termination did Defendant ever make an accommodation for Plaintiff, nor did Defendant make any effort to explore, determine, or in any way engage in an interactive process necessary to provide any accommodation for Plaintiff to return to work as an investigator.

59. As a result of Defendants unlawful actions and/or omissions, Plaintiff suffered loss of his wages and benefits, humiliation, and mental and emotional distress.

## COUNT IV
## AGE DISCRIMINATION
## 29 U.S.C. § 621

60. Plaintiff realleges and reasserts the allegations continued in paragraphs (1) through (59) of Count I - III of his Complaint as paragraphs (1) through (59) of his Complaint.

61. At all relevant times relevant hereto, Defendant was an employer under the ADEA, and Plaintiff was a non-exempt employee of the Defendant.

62. Plaintiff is a member of a protected group because he was over forty (40) years of age at the time of his termination.

63. At the time of his termination, Plaintiff was qualified for the position of investigator, was in compliance with all policies and procedures of the State's Attorney's Office, and was otherwise meeting the expectations of his employer.

64. After Plaintiff was fired from his position as investigator with the State's Attorney's Office, he was replaced by a younger individual, Mary Sarna.

65. As a direct and proximate result of the aforementioned action, Defendants deliberately discriminated against Plaintiff on the basis of his age in violation of his federally protected civil rights under the Age Discrimination in Employment Act of 1967 (ADEA), as amended 29 U.S.C. § 621 et seq.

66. As a direct and proximate result of the aforementioned action, Plaintiff has suffered damages, including but not limited to, lost and future wages and benefits, and physical and emotional harm.

## COUNT V
## RETALIATORY DISCHARGE IN
## VIOLATION OF ILLINOIS LAW
## 820 ILCS 305/4(h)

67. Plaintiff realleges and reasserts the allegations continued in paragraphs (1) through (66) of Count I – IV of his Complaint as paragraphs (1) through (66) of his Complaint.

68. At all relevant times, it was the clear mandate of public policy of the State of Illinois to protect its citizens from retaliation for asserting their rights under the Illinois Workers Compensation Act. The Illinois Workers Compensation Act explicitly makes it unlawful for employers to retaliate against employees who file for workers' compensation.

69. Plaintiff engaged in protective activity by exercising his rights under the Workers Compensation Act.

70. Defendants retaliated against Plaintiff for asserting his rights under the Illinois Workers' Compensation Act, as set forth herein, by terminating his employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Charles Salerno, prays for judgment against Defendants and respectfully request that this Court:

A. Enter judgment against Defendants awarding Plaintiff reinstatement with full back pay, and benefits;

B. Award Plaintiff compensatory damages in a fair and reasonable amount and for interest on Plaintiff's compensatory damages in an amount proved at trial, including but not limited to lost back and future wages and benefits;

C. Award Plaintiff reasonable cost of past and future medical care that is needed according to an amount proved at trial;

D. Award Plaintiff's costs and disbursements of this action, including reasonable attorney's fees and costs to be taxed against the Defendants pursuant to 42 U.S.C. § 12205;

E. Award Plaintiff prejudgment interest;

F. Award Plaintiff Liquidated damages in the amount of the back pay awarded for Defendant's willful violation of the ADEA.

G. Try all issues of fact by jury; and

H. Grant such other relief as may be just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Respectfully Submitted,

By: <u>*/S/Thomas S. Radja Jr.*</u>
Thomas S. Radja Jr.
Attorney for Plaintiff

Thomas S. Radja Jr.
COLLINS & RADJA
2200 W. Higgins Road, Suite 155
Hoffman Estates IL 60169
(773) 619-6047
Attny No. 6270464
radja@tsr-law.com

## **ATTESTATION**

Under penalties as provided by law pursuant to the Federal Rules of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to the matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

*/S/ Charles Salerno*
Charles Salerno

Thomas S. Radja Jr.
COLLINS & RADJA
2200 W. Higgins Road, Suite 155
Hoffman Estates IL 60169
(773) 619-6047
Attny No. 6270464
radja@tsr-law.com